**STATE OF WEST VIRGINIA**

*In re* **J.T., S.T., and R.T.**

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 19-0667** (Harrison County 19-JA-35-2, 19-JA-36-2, and 19-JA-37-2)

## MEMORANDUM DECISION

Petitioner Father D.T., by counsel Johnna Shumate, appeals the Circuit Court of Harrison County's June 18, 2019, order terminating his parental rights to J.T., S.T., and R.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison S. McClure, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he neglected the children and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed an abuse and neglect petition against the parents alleging that they had an extensive history of Child Protective Services ("CPS") interventions due to substance abuse, domestic violence, criminal activity, and chronic homelessness. Specifically, the DHHR alleged that J.T. and S.T. lived in unsafe and unsanitary living conditions or had been homeless resulting in the neglect of their hygienic, medical, educational, nutritional, and clothing needs. The petition contained a lengthy chronological history of CPS interventions and referrals, which included an allegation that R.T. witnessed domestic violence between petitioner and the mother of R.T. and S.T. The most recent referral provided that the family was sleeping on the streets in Clarksburg, West Virginia, and that the DHHR, as well as several social services

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

organizations, had attempted to help the family. However, the parents failed to follow through with the DHHR's remedial services, and the DHHR filed the underlying abuse and neglect petition.

The circuit court held an adjudicatory hearing in April of 2019. The parents failed to appear, but counsel represented them. Petitioner's counsel requested a continuance due to petitioner's absence, but the circuit court denied the motion. The DHHR presented evidence that the services provided to the parents prior to the filing of the petition were extensive and included in-home safety services and protection plans with the assistance of relatives, assistance with obtaining housing, and services to address their issues with domestic violence and substance abuse.[2] The DHHR presented the testimony of a service provider who stated that she visited the parents' temporary housing, which was infested with lice and covered in filth, including dog feces throughout the living space. She further testified that petitioner threatened her and the mother with physical harm in front of J.T. and S.T. The DHHR worker testified that despite the DHHR's efforts, the parents continued to divert their income, such as the mother's social security payments, towards their drug addictions and were unable to provide for the basic needs of the children. Ultimately, the circuit court adjudicated the parents as abusing parents.

In May of 2019, the circuit court held a final dispositional hearing. The circuit court learned that petitioner was incarcerated, but petitioner would not divulge his criminal charges. Petitioner moved for a post-adjudicatory improvement period and testified that he knew he had not been the "best father," that he had issues that he was "trying to work on," and that he was willing to comply with the terms and conditions of an improvement period. However, the circuit court denied the motion for an improvement period, finding that petitioner was unlikely to fully participate in an improvement period due to his total absence since the beginning of the proceedings and his failure to participate in any remedial services offered by the DHHR prior to and during the proceedings. The DHHR then moved to terminate petitioner's parental rights and explained that it had offered services to petitioner during the proceedings, but he failed to participate or otherwise communicate with the agency. Ultimately, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Accordingly, the circuit court terminated petitioner's parental rights by order entered on June 18, 2019.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

---

[2]Petitioner is the biological father to all three children. R.T. lives with her nonabusing mother, M.E. Pursuant to the DHHR's protection plan, J.T. and S.T. were placed with M.E. in January of 2019, where they remained after the filing of the petition.

[3]The mother's parental rights to J.T. and S.T. were also terminated below. According to respondents, the permanency plan for the children is for R.T. to remain in the custody of her nonabusing mother, M.E., who will adopt J.T. and S.T.

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner raises several assignments of error predicated upon his assertion that adjudication was inappropriate.[4] According to petitioner, it was error for the circuit court to find that he neglected J.T. and S.T. because he cared for them to the best of his ability despite his homelessness, which he contends was based primarily on his lack of financial means. Petitioner also argues that there was insufficient evidence to adjudicate him as an abusing parent of R.T. We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a

---

[4]Further, petitioner argues that the circuit court erred in terminating his parental rights to R.T. because it lacked jurisdiction over the child who lived in Lewis County, West Virginia. Although petitioner couches this argument in terms of jurisdiction, it is clear that he is actually challenging whether Harrison County was the appropriate venue for the proceedings. Upon our review, it is clear that venue was proper in Harrison County, West Virginia, as the fact that R.T. resided in Lewis County, West Virginia, at the time of the petition's filing was not determinative as to what venue would be appropriate. West Virginia Code § 49-4-601(a) provides, in relevant part, that venue may be appropriate in a number of locations, including "in the county in which the child resides, or if the petition is being brought by the [DHHR], *in the county where the custodial respondent or other named party abuser resides*, or in which the abuse or neglect occurred." (Emphasis added). Because the DHHR filed the petition, venue was proper where petitioner lived—Harrison County, West Virginia—as he was a "named party abuser" and/or retained his custodial rights to R.T. Accordingly, we find no merit to petitioner's argument regarding the circuit court's alleged lack of jurisdiction due to improper venue.

reasonable doubt as in criminal cases.'" *Id.* (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

> Pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose
>
> physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent of J.T. and S.T. Although petitioner addresses the allegation of chronic homelessness, he completely fails to address the allegations of his criminal conduct, his perpetuating domestic violence against the mother, and his chronic substance abuse. The record indicates that petitioner was severely addicted to drugs and refused remedial services. Petitioner also fails to explain how his alleged lack of financial means resulted in the condition of his temporary housing constituting a danger to the children's health. Further, the record indicates that the DHHR and other social service programs made several attempts to work with petitioner to place him and the children in suitable and safe housing but he refused to follow through with services. Moreover, the record indicates that J.T. and S.T.'s mother's monthly supplemental social security payments and other assistance should have been adequate to provide for the family's living expenses, but petitioner's substance addiction "dissipated family resources that could have been used for housing and care of the children." Given these facts, there is no indication that petitioner's inability to obtain housing was primarily due to a lack of financial means, and, therefore, the circuit court did not err by finding that J.T. and S.T. were neglected children pursuant to West Virginia Code § 49-1-201.

Regarding R.T., we find that sufficient evidence existed in the record to adjudicate petitioner as an abusing parent of that child. The record indicates that the petition "contained allegations of abuse and neglect by [petitioner] toward all three children." Specifically, the petition contained allegations of abuse and neglect of R.T., as she witnessed domestic violence between petitioner and the mother of J.T. and S.T. As discussed above, petitioner's tendency to perpetuate domestic violence and threaten others, including a DHHR service provider, is well documented. Further, the record indicates that petitioner failed to provide for the basic needs or adequately supervise all three children due to his chronic homelessness and severe substance abuse. Therefore, we find no error in the circuit court's adjudication of petitioner as an abusing parent to all three children.

Next, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period because he was likely to fully participate in an improvement period as evidenced by his recent employment and willingness to participate in rehabilitative services. We disagree and find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have noted

4

that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, the circuit court did not find petitioner's testimony credible because he had been absent throughout the proceedings and completely failed to communicate with the DHHR or cooperate with services in any way. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). The record clearly supports the circuit court's denial of a post-adjudicatory improvement period as petitioner failed to comply with offered services, communicate with the DHHR and service providers, or fully participate in the proceedings below. Accordingly, we find no error.

Petitioner also argues that the circuit court erred in terminating his parental rights by finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. Petitioner contends that he previously completed "programs" required by the DHHR and he is now employed. Further, petitioner argues that he demonstrated an ability to substantially correct his behavior and his willingness to complete any programs or treatment required. He further asserts that the circuit court failed to impose a less-restrictive dispositional alternative when the children were placed in a kinship foster home. We disagree and find that petitioner's argument is without merit.

Pursuant to West Virginia Code § 49-4-604(b)(6) (2019),[5] circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record establishes that petitioner failed to follow through with the DHHR's in-home safety plans or accept help from other social service programs prior to the filing of the petition. Petitioner's assertion on appeal that he completed certain "programs" is totally unavailing, given that he not only fails to identify what those programs were or provide evidence in support of such completion, but the record is clear that he utterly failed to cooperate with the DHHR prior to the children's removal. Moreover, the evidence established that once the proceedings were initiated, petitioner refused services, failed to acknowledge his substance abuse problem, and did not

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

recognize the dangers the children faced while in his care. Although petitioner appeared at the final dispositional hearing, he failed to appear at any prior proceedings or communicate with the DHHR throughout the proceedings. As petitioner clearly did not respond to or follow through with the DHHR's rehabilitative efforts, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future.

We likewise find that the record supports the finding that termination of petitioner's parental rights was necessary for the children's welfare. Petitioner fails to recognize the harm he inflicted upon the children and the danger he placed them in due to his substance abuse, chronic homelessness, domestic violence, and overall inability to parent. The record also shows that he made no concerted effort to arrange visitations with his children after they were no longer in his custody. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). As such, the record supports the finding that termination of petitioner's parental rights was necessary for the children's welfare.

Further, although J.T. and S.T. were placed with R.T. in a kinship foster home, petitioner is not entitled to a less-restrictive alternative to the termination of his parental rights to J.T. and S.T. We have held

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the children's welfare, we find no error in the circuit court's decision to terminate petitioner's parental rights to all three children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 18, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7